# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

THOMAS COX,

                                    :

                Petitioner,                         Case No. 1:10-cv-117

                                    :            Chief Judge Susan J. Dlott
      -vs-                                      Magistrate Judge Michael R. Merz

WARDEN, Pickaway Correctional
  Institution,

                                    :

                Respondent.

---

## REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought pursuant to 28 U.S.C. § 2254.

Mr. Cox was indicted by the May 2007 term of the Clermont County Grand Jury on one count of Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs in violation of Ohio Revised Code §2925.041(A), one count of Conspiracy in violation of Ohio Revised Code § 2923.01(A)(2) and one count of Aggravated Possession of Drugs in violation of Ohio Revised Code § 2925.11(A). (Return of Writ, Doc. No. 9, Ex. 1). In October 2007 he was convicted on all counts by a jury and later sentenced to an aggregate term of eight years imprisonment, the sentence he is now serving in Respondent's custody. The Ohio Court of Appeals affirmed his conviction. *State v. Cox,* 2009 Ohio 928, 2009 Ohio App. LEXIS 748 (Ohio App. 12th Dist. Mar. 2, 2009). The Ohio Supreme Court then declined to hear a further appeal. *State v. Cox*, 122 Ohio St. 3d 1457, 2009 Ohio 3131, 908 N.E.2d 946, 2009 Ohio LEXIS 1857 (2009).

Mr. Cox then filed his Petition in this Court, raising the following claims:

**GROUND ONE:** PETITIONER'S 6TH AND 14TH AMENDMENT RIGHT TO A FAST AND SPEEDY TRIAL WAS VIOLATED, AS A RESULT OF THE STATE'S COURT'S MISAPPLICATION OF ITS SPEEDY TRIAL STATUTE.

**Supporting Facts:** State law of Ohio requires, as set forth in Ohio Rev. Code Sec. 2945.71, a strict time period of ninety days to bring a Defendant to trial. However, both: the Court of Common Pleas, as well as the Court of Appeals for Clermont County, Ohio, miscalculated the exact number of days that I served in the county jail, in lieu of bail, which violated by 6th and 14th Amendment right to a speedy public trial, and my rights to due process of law, by violating the statutory period requirements found in the state law statute.

**GROUND TWO:** PETITIONER'S 6TH AND 14TH AMENDMENT RIGHTS WERE VIOLATED, AS A RESULT OF THE FACT THAT THE PETITIONER'S TRIAL COUNSEL, AT TRIAL, WAS INEFFECTIVE.

**Supporting Facts:** At trial, defense counsel was unprepared for trial, and failed to adequately protect the Petitioner's rights. Defense counsel representation deprived the Petitioner of his right to a fair trial. Defense counsel failed to protect the Petitioner's speedy trial rights at trial, and defense counsel was ineffective for failing to "object" to layman opinion evidence offered by police officers …(Agent Sorbello and Agent Hensley)… pertaining to the alleged manufacturing of methamphetamine, on grounds that these agents were not "experts;" and defense counsel was ineffective for failing to "object" to the testimony offered Deborah Keeton, on grounds that her testimony failed to have any relevant foundation.

**GROUND THREE:** PETITIONER'S 14TH AMENDMENT RIGHT TO DUE PROCESS OF LAW WAS VIOLATED, AS A RESULT OF THE FACT THAT OTHER PRIOR BAD [ACT] EVIDENCE WAS USED AGAINST HIM AT TRIAL.

**Supporting Facts:** Under the rules of evidence, Rule 404(B) provides that evidence of other crimes, wrongs, or acts is not admissible to prove character of the person in order to show conformity therewith. In this case, the prosecutor elicited testimonial evidence from Ms. Deborah Keeton, for purposes of showing that the Petitioner had previously committed prior bad acts, pertaining to pseudoephedrine and methamphetamine, on prior occasions.

-2-

Petitioner's right to a fair trial, as provide by the due process clause, was violated based on such testimony.

**GROUND FOUR:** PETITIONER'S CONVICTION FOR ILLEGAL POSSESSION OF CHEMICALS FOR MANUFACTURING AND CONSPIRACY, ARE BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF DUE PROCESS.

**Supporting Facts:** The 14th Amendment due process clause, requires that the prosecuting attorney must prove, beyond a reasonable doubt, each and every essential element of its case, as required by the 14th Amendment. In the present case, the prosecutor failed to prove that it was the intent of the Petitioner to commit the offense of illegal assembly; manufacturing; and conspiracy to commit these alleged offenses. Accordingly, his convictions for these alleged offenses must be vacated; and the Petitioner must be discharged on an unconditional writ.

**GROUND FIVE:** APPELLATE COUNSEL ON DIRECT APPEAL WAS INEFFECTIVE BELOW AN OBJECTIVE STANDARD OF REASONABLE REPRESENTATION, THAT PREJUDICED THE OUTCOME OF PETITIONER'S DIRECT APPEAL PROCEEDING, IN VIOLATION OF PETITIONER'S 6TH AND 14TH AMENDMENT RIGHTS, AS GUARANTEED BY THE UNITED STATES CONSTITUTION, AS A RESULT OF APPELLATE COUNSEL'S FAILURE TO RAISE THE SPECIFIC CLAIM THAT MY CONVICTION FOR ILLEGAL ASSEMBLY AND CONSPIRACY TO MANUFACTURE, AS BASED ON THE SAME UNDERLYING COURSE OF CRIMINAL CONDUCT, AND IS THEREFORE "ALLIED OFFENSES." MY SENTENCE IS DOUBLE JEOPARDY. APPELLATE COUNSEL SHOULD HAVE RAISED A CLAIM THAT I COULD NOT BE CONVICTED OF BOTH OFFENSES.

**Supporting Facts:** Petitioner was convicted of illegal assembly and conspiracy to manufacture are one of the same, and violates the conspiracy statute, as well as the allied offense statute, by convicting him on multiple offenses, and by imposing multiple sentences, for offenses that should have been merged. The indictment charged the Petitioner with illegal assembly, and conspiracy to commit illegal manufacturing, violations of Ohio Rev. Code Section(s) 2925.041(A)(; 2923.01(A)(2); and 2925.04(A). These offenses stem from Petitioner's arrest with two other individuals that were arrested on April 13, 2007, for possessing Sudafed tablets, by purchasing

these tablets from Wal-Mart and Kroger's grocery store. Petitioner Cox was the "driver" of the automobile that transported the two individuals to both Wal-Mart and Krogers. Petitioner did not exit the vehicle to purchase any Sudafed. Petitioner was merely the "driver" of the vehicle. Petitioner did not admit to taking any part in manufacturing any drugs. The only testimony that Petitioner admitted to was driving his friends to Wal-Mart and then to Krogers. In any event, the Petitioner was indicted for both: illegal assembly and "conspiracy" to manufacture drugs, i.e., methamphetamine. The Petitioner was subsequently convicted of both offenses. Count one of the indictment alleged that it was the Petitioner's intent and/or purpose to knowingly commit illegal assembly, by possessing a chemical to manufacture methamphetamine. Count two of the indictment alleged that it was the intent and purpose of the petitioner by "conspiring" with others to "manufacture" methamphetamine. Additionally, it must be noted that, in the Bill of Particulars, the prosecutor stated that the Defendant "aided and abetted another" in both: counts one and two, to commit the offenses of illegal assembly and manufacturing. This, it is apparent that both offenses are "allied offenses" for purposes of merger. See. Ohio Rev. Code Sec. 2941.25(A). Secondly, pursuant to Ohio's "conspiracy" statute, it provides that: ",,when a person is convicted of committing or attempting to commit the specific offense or of complicity in the commission of or attempt to commit the specific offense, the person shall not be convicted of conspiracy involving the same offense." Thus, the "conspiracy" statute itself prohibited multiple convictions pertaining to the same "manufacturing" and "illegal assembly." Thus, appellate counsel on direct appeal violated Petitioner's 6th and 14th Amendment rights for failing to raise these arguments.

**GROUND SIX:** APPELLATE COUNSEL ON DIRECT APPEAL WAS INEFFECTIVE, BELOW AN OBJECTIVE STANDARD OF REASONABLE REPRESENTATION, WHICH PREJUDICED THIS PETITIONER'S DIRECT APPEAL, AS THE OUTCOME WOULD HAVE BEEN DIFFERENT, AS A RESULT OF APPELLATE'S COUNSEL'S FAILURE TO RAISE A SPECIFIC CLAIM THAT COUNSEL AT TRIAL WAS INEFFECTIVE, RESULTING FROM TRIAL COUNSEL'S INEFFECTIVE PERFORMANCE TO FAILING TO "OBJECT" TO PETITIONER'S MULTIPLE CONVICTION(S) AND MULTIPLE SENTENCE(S), STEMMING FROM THE SAME CONSPIRACY AND ALLIED OFFENSE DOCTRINE.

**Supporting Facts**: At trial, and at sentencing, defense counsel failed to raise an "objection" pertaining to the fact that the Petitioner was being tried for both illegal assembly and conspiracy to manufacture, that stemmed from the same "aiding and abetting" of others that is asserted in both counts, one and two of the indictment, for allegedly committing a conspiracy to manufacture methamphetamine, that pertains to both offenses. Defense counsel failed to raise any objections, either at trial, or at sentencing, claiming that the Petitioner could not be convicted and sentenced under both counts based on the same conspiracy. According to Ohio Revised Code Sec. 2923.01(F) provides that: ",,, a person who conspires to commit more the one offense is guilty of only one conspiracy, when the offenses are the object of the same agreement or continuous conspiratorial relationship." (Emphasis added). Thus, notwithstanding that the allied offense statute prohibiting multiple convictions (under paragraph (G)); and the conspiracy statute states that, in essence, there is only "one conspiracy" committed, (see paragraph (F), quoted above). Thus, in light of these circumstances, coupled with the fact that the Bill of Particulars states that the Petitioner committed an "aiding and abetting" in both counts, that prohibited the Petitioner from being convicted of both offenses, that stemmed from the same conspiracy. Thus, defense counsel's failure to "object" to the multiple prosecutions, and multiple punishments that trial court imposed in this case, amounted to ineffective assistance of trail counsel. Additionally, appellate counsel's performance on direct appeal was ineffective, that prejudiced the outcome of Petitioner's direct appeal, by failing to raise the specific claim that trial counsel was ineffective for failing to "object" to the multiple prosecutions and multiple punishments from being imposed, as violative of: (1) the allied offense doctrine; (2) as violating the conspiracy statute; and (3) as violating the fifth amendment right to be free from double jeopardy; and (4) as violating the due process clause of the 14th amendment to the United States Constitution, wherefore, Petitioner asks the court for judgment granting the writ of habeas corpus by deducting four (4) years off of Petitioner's sentence; and by ordering that either count one or count two, must be vacated, to correct the "multiple convictions" and "multiple punishments."

(Petition, Doc. No. 1, PageID 4-8.) As ordered by Magistrate Judge Black[1], the Respondent filed

---

[1]The referral in this case has been changed several times because shortly after ordering the Answer, Judge Timothy Black was confirmed as a district judge of this Court and resigned his position as a magistrate judge.

a Return of Writ (Doc. No. 9) on June 18, 2010. Petitioner has not filed a reply and the case is therefore ripe for decision.

# Analysis

## Ground One

In his first claim for relief, Petitioner asserts that his constitutional right to a speedy trial was violated when the state courts misapplied the Ohio speedy trial statute, Ohio Revised Code § 2945.71, *et seq.* Cox raised a speedy trial claim in the Ohio Court of Appeals as follows and received the following decision:

> [*P10] "THE TRIAL [COURT] ERRED AS A MATTER OF LAW BY OVERRULING APPELLANT'S MOTION TO DISMISS ON SPEEDY TRIAL GROUNDS."
>
> [*P11] In his first assignment of error, appellant argues the trial court erred in denying his motion to dismiss where he was not brought to trial within 90 days of his original arrest for the offenses in question. We find appellant's argument without merit.
>
> [*P12] Both the United States and Ohio Constitutions guarantee a criminal defendant the right to a speedy trial. *State v. Davenport*, Butler App. No. CA2005-01-005, 2005 Ohio 6686, P7, *citing State v. Baker,* 78 Ohio St.3d 108, 110, 1997 Ohio 229, 676 N.E.2d 883. Additionally, Ohio's statutory scheme provides specific time requirements within which the state must bring an accused to trial. See R.C. 2945.71-2945.73. The Ohio speedy-trial statute is mandatory and must be strictly construed against the state. *State v. Sandera,* Brown App. No. CA2007-09-016, 2008 Ohio 6378, P4.
>
> [*P13] Pursuant to R.C. 2945.71(C)(2), a person against whom a felony charge is pending must be brought to trial within 270 days

from the date of his arrest, not including the date of his arrest. *Davenport* at P7; *Sandera* at P5. R.C. 2945.71(E), known as the "triple count provision," provides that when an accused is held in jail in lieu of bail on the pending charge, each day shall be counted as three days. *Davenport; Sandera*. In effect, this provision creates a 90-day speedy-trial timetable where an accused is held in jail on the pending charge. *Davenport*.

[*P14] Once a defendant demonstrates he was not brought to trial within the required time period, the accused presents a prima facie case for release. *State v. Masters*, 172 Ohio App.3d 666, 2007 Ohio 4229, P10, 876 N.E.2d 1007. The burden then shifts to the state to demonstrate that sufficient time was tolled or extended under the statute. *Id.*, citing *State v. Butcher* (1986), 27 Ohio St.3d 28, 31, 27 Ohio B. 445, 500 N.E.2d 1368. A defendant's right to a speedy trial may be waived, provided such waiver is either expressed in writing or made in open court on the record. *State v. King,* 70 Ohio St.3d 158, 1994 Ohio 412, 637 N.E.2d 903, syllabus.

[*P15] Appellate review of speedy-trial issues involves a mixed question of law and fact. *Davenport*, 2005 Ohio 6686 at P8, citing *State v. High*, 143 Ohio App.3d 232, 242, 2001 Ohio 3530, 757 N.E.2d 1176. A reviewing court must accord deference to the trial court's findings of fact if they are supported by competent, credible evidence, but will independently review whether the trial court correctly applied the law to the facts of the case. Id., citing *High*.

[*P16] In this case, appellant contends the trial court erred in denying his motion to dismiss because he was not brought to trial within 90 days of his original arrest on April 13, 2007. According to appellant, the original felony complaint under which he was charged for the offenses in question was dismissed ten days following his arrest, and he was in jail for the duration of such time period. He was then indicted on May 2, 2007 on the same offenses, and brought to trial for the first time on August 9, 2007. Appellant argues his trial date was beyond the mandatory 90-day time period from the date of his arrest, such that the trial court erred in denying his motion to dismiss on speedy-trial grounds.

[*P17] As an initial matter, we note that the record is devoid of any documentary evidence concerning appellant's original arrest and the original felony complaint. There is also no indication in the record as to the length of time appellant was incarcerated following his arrest, or whether he was released from jail following the dismissal of the

-7-

complaint. We further note that appellant has failed to provide this court with a transcript of the hearing held on October 3, 2007, during which the trial court denied his motion to dismiss. "In the absence of a complete and adequate record necessary for the resolution of an assignment of error, the reviewing court must presume the regularity of the trial court proceedings and the presence of sufficient evidence to support the trial court's decision." *State v. Kelly* (2001), 145 Ohio App.3d 277, 283, 762 N.E.2d 479, citing *State v. Nichols* (1997), 122 Ohio App.3d 631, 634, 702 N.E.2d 504.

[*P18] Moreover, our review of the record provided on appeal demonstrates the trial court did not err in denying appellant's motion to dismiss. The record indicates that the indictment in this case was filed on May 2, 2007, and that appellant was served with the indictment on June 5, 2007. The record further indicates that appellant was committed to jail on June 5, 2007. Accordingly, speedy-trial time under the triple count provision of the statute began to run on June 5, 2007. *State v. Riley,* 162 Ohio App.3d 730, 2005 Ohio 4337, P20, 834 N.E.2d 887.

[*P19] The record indicates that on June 12 and 15, 2007, the trial court granted continuances upon the agreement of both parties, though appellant did not waive his speedy-trial rights at that time. Ohio courts have previously held that "reasonable continuances agreed to by counsel, even over the defendant's objection, * * * toll the speedy trial clock." *State v. Miller*, Franklin App. No. 04AP-285, 2005 Ohio 518, P9. This is true, "even in the absence of an explicit waiver of the accused's right to a speedy trial." *State v. Huston*, Wyandot App. Nos. 16-05-23, 16-05-24, 2006 Ohio 6857, P18. Accordingly, 21 days of speedy-trial time elapsed from June 5, 2007 to June 12, 2007, at which point speedy-trial time was tolled. See id.

[*P20] The record indicates that appellant thereafter filed his motion to dismiss on August 2, 2007. "[A] motion to dismiss acts to toll the time in which a defendant must be brought to trial," and "the time that elapse[s] while the motion [is] pending is not included for purposes of R.C. 2945.71." *State v. Bickerstaff* (1984), 10 Ohio St.3d 62, 67, 10 Ohio B. 352, 461 N.E.2d 892. As previously stated, the trial court conducted a hearing on appellant's motion, and issued its findings on the record at the conclusion of the hearing, on October 3, 2007. The matter then proceeded to a jury trial the same day. Accordingly, our review of the record demonstrates that appellant was brought to trial for the first time well within the requisite 90-day speedy-trial time period. n1

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n1 We note that appellant's speedy-trial rights were not violated even if we accept appellant's contention that he was arrested on April 13, 2007, and incarcerated for ten days from the date of his arrest until the original complaint was dismissed. Applying the triple count provision of the statute to the period of appellant's incarceration, 30 days of additional speedy-trial time may be charged to the state, for an aggregate period of 51 days.

- - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - -

[*P21] Based upon the foregoing, we find that appellant has failed to demonstrate the trial court erred in denying his motion to dismiss on speedy-trial grounds. Accordingly, appellant's first assignment of error is without merit and is hereby overruled.

*State v. Cox*, 2009 Ohio 928, ¶¶ 10-21 (Ohio App.  12th Dist. Mar. 2, 2009).

As the Court of Appeals mentions, there are both federal constitutional and Ohio statutory rights to a speedy trial.  Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. §2254(a); *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13; 178 L. Ed. 2d 276 (2010)*;Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62 (1991).

As is evident from the Court of Appeals decision, it treated Mr. Cox's first assignment of error as raising only an Ohio statutory claim and it decided that claim was without merit.  This Court cannot reexamine a state court's decision on a question of state law and therefore must take it as established that Clermont County did not violate Mr. Cox's statutory right to a speedy trial under Ohio law.

With respect to any federal speedy trial claim, Mr. Cox is also not entitled to relief.  If this

-9-

Court treats his state appeal as raising only the Ohio statutory claim, then his federal claim is procedurally defaulted because it was not fairly presented to the state courts to allow them an opportunity to decide it.  The only federal law citation in the brief on appeal is to *Klopfer v. North Carolina*, 386 U.S. 213 (1967), which held that the federal constitutional speedy trial requirement is applicable to the States through the Fourteenth Amendment.  (See Brief, PageID 894) All of the argument is in terms of the Ohio statute.  In order to be able to eventually present a federal constitutional claim in federal habeas, a defendant must first exhaust that claim by fairly presenting it in the state courts; otherwise he has procedurally defaulted on the claim.  The claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506 (6th Cir. 1993); *Riggins v. McMackin,* 935 F.2d 790 (6th Cir. 1991).  "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).  Here no federal constitutional argument was made in the state court of appeals and therefore the first ground for relief is procedurally defaulted.

**Ground Two**

In his second Ground for Relief, Mr. Cox asserts his trial counsel was ineffective by (1) failing to protect Cox's speedy trial rights, (2) failing to object to lay opinion evidence from police officers, and (3) failing to object to the testimony of Deborah Keeton.  This claim was raised as

assignment of error two in the state court of appeals and decided as follows:

[*P56] "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS THUS PREJUDICING HIS RIGHT TO A FAIR TRIAL."

[*P57] Finally, appellant argues his trial counsel was ineffective in failing to "properly prosecute" appellant's motion to dismiss on speedy trial grounds, and failing to object to the trial testimony Agent Sorbello, Keeton, and Hensley. We find appellant's arguments without merit.

[*P58] In reviewing a claim of ineffective assistance of counsel, this court must determine: (1) whether counsel's performance fell below an objective standard of reasonable professional competence, and (2) if so, whether there is a reasonable probability that counsel's unprofessional errors prejudiced appellant such that he was deprived a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 690-91, 104 S.Ct. 2052, 80 L. Ed. 2d 674. See, also, *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. [ 5 ]

[*P59] To demonstrate an error in counsel's actions, appellant must overcome the strong presumption that licensed attorneys are competent, and that the challenged action is the product of sound trial strategy and falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690-91. To demonstrate resulting prejudice, appellant must establish a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceedings would have been different. *Id.* Appellant must demonstrate that, due to his attorney's ineffectiveness, his trial was so demonstrably unfair that there is a reasonable probability the result would have been different absent his attorney's deficient performance. *Id.* at 693.

[*P60] Appellant first argues his trial counsel was ineffective because he was not prepared to argue appellant's motion to dismiss when the matter was originally set for a hearing, and therefore, the trial court "did not really address the issue until the [m]otion was renewed * * * at the sentencing hearing." We find this contention without merit. While the record demonstrates that counsel informed the court that he was not ready to proceed on the motion to dismiss during the August 2, 2007 hearing on the matter, the record demonstrates that counsel renewed the motion and argued the same prior to trial on October 3, 2007. The record demonstrates that the trial court

-11-

overruled appellant's motion at that time, and that the matter then proceeded to trial. Accordingly, appellant's contention that the trial court did not address his motion until sentencing is unsupported by the record in this case.

[*P61] Appellant also argues his trial counsel was ineffective in failing to object to Agent Sorbello's testimony concerning the manufacture of methamphetamine. Appellant contends such testimony lacked foundation and that Agent Sorbello was not qualified as an expert. We find appellant has failed to demonstrate counsel was deficient in this regard.

[*P62] As previously discussed, the record demonstrates that Agent Sorbello testified as to his education, training, and experience in the field of identifying methamphetamine, including the production of methamphetamine. He indicated that he has completed 282 hours of special courses pertaining to the investigation, dismantling, and supervision of "clandestine drug laboratory operations," and has been involved in 500 cases involving methamphetamine. Accordingly, we find appellant has failed to prove his counsel was deficient in failing to object to Agent Sorbello's testimony where the state laid the proper foundation for Agent Sorbello to testify concerning the production of methamphetamine. See *McKee*, 91 Ohio St.3d at syllabus.

[*P63] Similarly, appellant argues his trial counsel was ineffective in failing to object to Keeton's testimony that she and appellant had previously purchased products to manufacture methamphetamine where the state failed to lay the proper foundation, and where such testimony constituted "other acts" in violation of Evid.R. 404(B). As previously discussed, however, the record demonstrates that Keeton's testimony as to her extensive history of methamphetamine use, as well as previous occasions on which she purchased pseudoephedrine with appellant, was presented to prove the existence of the conspiracy. In addition, such testimony established appellant's intent, plan, and knowledge with respect to the collection of pseudoephedrine pills on the date of the incident, such that the trial court properly admitted the evidence pursuant to Evid.R. 404(B). Accordingly, appellant has failed to demonstrate counsel was ineffective in failing to object to Keeton's testimony.

*State v. Cox*, 2009 Ohio 928, ¶¶ 56-63 (Ohio App.  12th Dist. Mar. 2, 2009).

As can be seen from this excerpt, the claim of ineffective assistance of trial counsel was

-12-

presented to the state court of appeals on federal constitutional grounds and decided by that court

on the merits.

The Supreme Court has elaborated on the standard of review of state court decisions

on claims later raised in federal habeas corpus:

> The Antiterrorism and Effective Death Penalty Act of 1996 modified
> a federal habeas court's role in reviewing state prisoner applications
> in order to prevent federal habeas "retrials" and to ensure that
> state-court convictions are given effect to the extent possible under
> law.  See *Williams v. Taylor,* 529 U.S. 362, 403-404, 120 S.Ct. 1495,
> 146 L.Ed.2d 389 (2000).   To these ends, § 2254(d)(1) provides:

> (d) An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim--
> "(1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States."

> As we stated in *Williams,* § 2254(d)(1)'s "contrary to" and
> "unreasonable application" clauses have independent meaning.  529
> U.S., at 404-405, 120 S.Ct. 1495.   A federal habeas court may issue
> the writ under the "contrary to" clause if the state court applies a rule
> different from the governing law set forth in our cases, or if it decides
> a case differently than we have done on a set of materially
> indistinguishable facts.  *Id.,* at 405-406, 120 S. Ct. 1495.   The court
> may grant relief under the "unreasonable application" clause if the
> state court correctly identifies the governing legal principle from our
> decisions but unreasonably applies it to the facts of the particular
> case.  *Id.,* at 407-408, 120 S.Ct. 1495.   The focus of the latter inquiry
> is on whether the state court's application of clearly established
> federal law is objectively unreasonable, and we stressed in *Williams*
> that an unreasonable application is different from an incorrect one.
> *Id.,* at 409- 410, 120 S.Ct. 1495.   See also *id.,* at 411, 120 S.Ct. 1495
> (a federal habeas court may not issue a writ under the unreasonable
> application clause "simply because that court concludes in its
> independent judgment that the relevant state-court decision applied
> clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685, 693-94 (2002).

> AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996]
> provides that, when a habeas petitioner's claim has been adjudicated
> on the merits in state-court proceedings, a federal court may not grant
> relief unless the state court's adjudication of the claim "resulted in a
> decision that was contrary to, or involved an unreasonable application
> of, clearly established Federal law, as determined by the Supreme
> Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court
> decision is contrary to this Court's clearly established precedents if
> it applies a rule that contradicts the governing law set forth in our
> cases, or if it confronts a set of facts that is materially
> indistinguishable from a decision of this Court but reaches a different
> result. *Williams v. Taylor, supra,* at 405; *Early v. Packer,* 537 U.S. 3,
> 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam).* A state-court
> decision involves an unreasonable application of this Court's clearly
> established precedents if the state court applies this Court's
> precedents to the facts in an objectively unreasonable manner.
> *Williams v. Taylor, supra,* at 405; *Woodford v. Visciotti,* 537 U.S. 19,
> 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam).*

*Brown v. Payton,* 544 U.S. 133, 134 (2005).

Here the state court of appeals correctly identified the controlling federal standard from

*Strickland, supra*. Its application of *Strickland* is not objectively unreasonable as to each of the

claims made. As to the speedy trial claim, the court found that counsel argued it as effectively as

could be done and in any event there was no prejudice because there was no violation of Ohio

Revised Code § 2945.71, et seq. As to the foundation for Agent Sorbello's testimony, his

experience was clearly sufficient to permit his testimony. Compare *Kumho Tire Co. v. Carmichael*,

526 U.S.137, 152, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999). As to witness Keeton, the court of

appeals found her testimony was both relevant and competent to prove the conspiracy claim and to

prove plan as permitted under Ohio R. Evid. 404(B). Because the evidence was properly admissible,

-14-

counsel was not ineffective in failing to attempt to prevent it.  All of these conclusions are reasonable, indeed correct, applications of *Strickland*.

Therefore Petitioner's second ground for relief should be dismissed.


## Ground Three


In his third ground for relief, Petitioner claims his right to due process of law was violated by the use against him of prior "bad act" evidence.

Respondent notes that there was no contemporaneous objection to this evidence at trial and the court of appeals therefore reviewed it only for plain error.  *State v. Cox*, 2009 Ohio 928, ¶ 51 (Ohio App.  12th Dist. Mar. 2, 2009).  Respondent therefore asserts that Mr. Cox has procedurally defaulted in the presentation of this claim.

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *see also Simpson v. Jones,* 238 F. 3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982).  Absent cause and prejudice, a federal habeas petitioner who

fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982);  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default.  *Eley v. Bagley*, 604 F.3d 958, (6th Cir. 2010) *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407 (2001);.

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,*785 F.2d, at 138.

Applying the Maupin standard, the Court finds that Ohio does have a contemporaneous

objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471, 166 N.E.2d 379 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162, 694 N.E.2d 932 (1998) — and that this rule is an adequate and independent state ground for decision. *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).

Furthermore, reservation of authority to review in exceptional circumstances for plain error is not sufficient to constitute application of federal law. *Cooey v. Coyle,* 289 F.3d 882, 897 (6th Cir. 2002); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000). A state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F. 3d 239 (6th Cir. 2001), citing *Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

Finally, if this Court were to reach the merits, it would conclude that the court of appeals decision was not an unreasonable application of clearly established federal law. Keeton's testimony about her and Mr. Cox's prior involvement with pseudoephedrine and methamphetamine was relevant to proving intent, plan, and knowledge. It was therefore no violation of Cox's right to a fair

trial to admit it.  The third ground for relief should be dismissed with prejudice.

## Ground Four

In Ground Four, Mr. Cox claims his conviction is not supported by sufficient evidence.  This does state a claim for relief under the Fourteenth Amendment.  *Jackson v. Virginia*, 443 U.S. 307 (1979).

In the state court of appeals, Mr. Cox combined this claim with a claim under Ohio law that the conviction was against the manifest weight of the evidence.  On the combined claim, assignment of error five, the court of appeals wrote:

> [*P24] In his fifth assignment of error, appellant argues his convictions for illegal possession of chemicals for the manufacture of drugs and conspiracy are not supported by sufficient evidence and are against the manifest weight of the evidence. We find appellant's arguments without merit.

> [*P25] In reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Lucas,* Tuscarawas App. No 2005AP090063, 2006 Ohio 1675, P8; *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Haney*, Clermont App. No. CA2005-07-068, 2006 Ohio 3899, P14, quoting *State v. Tenace*, 109 Ohio St.3d 255, 2006 Ohio 2417, P37, 847 N.E.2d 386.

> [*P26] While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge "concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue

rather than the other." Thompkins at 387. In determining whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to overturn a conviction based on the manifest weight of the evidence is to be invoked only in those extraordinary circumstances to correct a manifest miscarriage of justice where the evidence presented weighs heavily in favor of acquittal." *Id.*

[*P27] "'Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.'" *State v. Lombardi*, Summit App. No. 22435, 2005 Ohio 4942, P9, quoting *State v. Roberts* (Sept. 17, 1997), Lorain App. No. 96CA006462, 1997 Ohio App. LEXIS 4255, 1997 WL 600669, at *2. Because our resolution of appellant's claim that his convictions are against the weight of the evidence is dispositive in this case, we will address such argument first.

[*P28] Appellant first contends his conviction for illegal possession of chemicals for the manufacture of drugs is against the manifest weight of the evidence where no evidence was presented at trial demonstrating that he possessed pseudoephedrine or had the requisite intent to manufacture methamphetamine. R.C. 2925.041(A) provides that "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of [R.C.] 2925.04." "A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

[*P29] Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Gragg,* 173 Ohio App.3d 270, 2007 Ohio 4731, P19, 878 N.E.2d 55; *State v. Hankerson* (1982), 70 Ohio St.2d 87, 91, 434 N.E.2d 1362. A person

-19-

has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over such item, even if it is not within his immediate physical possession. *Gragg; Hankerson*.

[*P30] Further, "[w]ith regard to the ability to prove an offender's intentions, the Ohio Supreme Court has recognized that 'intent, lying as it does within the privacy of a person's own thoughts, is not susceptible [to] objective proof.'" *State v. Wilson*, Warren App. No. CA2006-01-007, 2007 Ohio 2298, P41, quoting *State v. Garner*, 74 Ohio St.3d 49, 60, 1995 Ohio 168, 656 N.E.2d 623. Accordingly, "[i]ntent must often * * * be inferred from the act itself and the surrounding circumstances, including the acts and statements of the defendant surrounding the time of the offense." *Id.*; *State v. Hutchinson* (1999), 135 Ohio App. 3d 459, 734 N.E.2d 454, 457.

[*P31] In this case, the state presented the testimony of Officer Bail, who indicated that he searched both appellant's person and the vehicle appellant was operating on the date in question. Officer Bail indicated that he discovered $190 in cash in appellant's pocket, as well as a pen-like device called a "snorter" used to ingest methamphetamine. Officer Bail testified that the "snorter" tested positive for methamphetamine. With respect to his search of the vehicle, Officer Bail testified that he discovered a plastic bag containing pseudoephedrine pills in the center of the vehicle between the driver's and passenger's seats. Officer Bail indicated that additional pseudoephedrine pills were found in the Kroger bag Pendleton carried out of the store.

[*P32] Appellant's companions also testified at trial concerning their involvement in the purchase of pseudoephedrine on the date in question. First, Kenneth Barber testified that the night before the incident in this case, he asked appellant for a ride to traffic court the following morning, to which appellant agreed. The following day, appellant drove Barber to court, then asked Barber if he would purchase three boxes of pseudoephedrine pills for him in exchange for the ride. Barber testified that appellant picked up Pendleton, Hensley, and Keeton that day, and that the group proceeded to travel to a number of pharmacies in Clermont County. Barber indicated that he purchased pseudoephedrine pills at three such locations, including the Kroger store where appellant was apprehended, and that he provided appellant with a total of two boxes of pseudoephedrine pills on the date in question.

-20-

[*P33] Benjamin Pendleton also testified at trial that appellant asked him to purchase pseudoephedrine pills in exchange for $50 per box. He indicated that a box costs approximately $4 to $5. Pendleton testified that appellant drove him, along with Hensley, Keeton, and Barber, to a number of pharmacies on the date of the incident, and that he purchased three boxes of pseudoephedrine for appellant. Pendleton indicated that upon receiving the pills, appellant removed the pills from the packaging, placed them in a plastic bag, and disposed of the boxes and packaging.

[*P34] Ashley Hensley testified that she, too, accompanied appellant to a number of pharmacies on the date in question, and that she was 16 years old at the time. Hensley testified that she has used methamphetamine for several years and that appellant has provided her with methamphetamine in the past. Hensley also testified that she, Pendleton, Barber, and appellant used methamphetamine on the date of the incident prior to traveling to the pharmacies to purchase pseudoephedrine.

[*P35] Finally, Deborah Keeton testified as to her involvement in the incident. She indicated that she has previously purchased pseudoephedrine with appellant on approximately 20 occasions, and that the purpose of purchasing pseudoephedrine was to manufacture methamphetamine. Keeton testified that on the date in question, she purchased one box of pseudoephedrine for appellant, and that the purpose of collecting the pseudoephedrine that day was to manufacture methamphetamine.

[*P36] Based upon the foregoing evidence, and after a thorough review of the record in this case, we cannot conclude the jury clearly lost its way or created a manifest miscarriage of justice in finding appellant guilty of illegal possession of chemicals for the manufacture of drugs. As an initial matter, the testimony of Officer Bail supports the jury's conclusion that appellant "possessed" pseudoephedrine pills, as the pills were discovered within appellant's immediate reach in the vehicle he was operating. Moreover, Barber, Pendleton, and Keeton all indicated that they purchased the pills on the date in question, then gave the pills to appellant. The jury, as the trier or fact, was permitted to determine the credibility of the witnesses and make its determination accordingly. See *State v. Walker*, Butler App. No. CA2006-04-085, 2007 Ohio 911, P26, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.

-21-

[*P37] Moreover, the evidence presented at trial supports the jury's conclusion that appellant possessed the requisite intent to manufacture methamphetamine. The evidence demonstrates that appellant drove his companions to a number of pharmacies to purchase pseudoephedrine, and that appellant's companions purchased several boxes of pseudoephedrine at his request. The evidence indicates that upon receiving the pills from his companions, appellant removed the pills form their packaging and placed them in a plastic bag. Significantly, Keeton testified that she and appellant had purchased pseudoephedrine on multiple previous occasions for the purpose of manufacturing methamphetamine. As stated, the jury was permitted to determine the weight and credibility of the evidence presented at trial in determining whether appellant intended to manufacture methamphetamine.

[*P38] Appellant also argues that his conviction for conspiracy to commit illegal manufacture of drugs is against the manifest weight of the evidence. Pursuant to R.C. 2923.01(A)(2), "[n]o person, with purpose to commit or to promote or facilitate the commission of * * * a felony drug trafficking, manufacturing, processing, or possession offense, shall * * * [a]gree with another person or persons that one or more of them will engage in conduct that facilitates the commission of any of the specified offenses." The statute further provides that "[n]o person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. For purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed." R.C. 2923.01(B). Relevant to this case, R.C. 2925.04 provides that "[n]o person shall * * * knowingly manufacture or otherwise engage in any part of the production of a controlled substance."

[*P39] The state alleged that appellant conspired with his companions to purchase pseudoephedrine to be used in the manufacture of methamphetamine. The state further alleged that appellant committed a substantial overt act in furtherance of the conspiracy by providing transportation to his companions for the purpose of purchasing pseudoephedrine. Appellant, however, argues the state failed to prove that providing transportation facilitated the manufacture of methamphetamine because there was no evidence demonstrating that appellant, himself, was going to manufacture methamphetamine. We find the evidence presented at trial supports

-22-

the jury's conclusion that appellant conspired with others to facilitate the manufacture of methamphetamine.

[*P40] As stated, the state presented evidence that appellant asked Barber, Pendleton, and Keeton to purchase pseudoephedrine products for him on the date in question, and provided these individuals with transportation to a number of pharmacies in the area to do so. Such individuals testified that they knew pseudoephedrine was used to manufacture methamphetamine, and Keeton specifically testified that she and appellant had purchased pseudoephedrine on previous occasions for the purpose of manufacturing methamphetamine. Agent Marc Anthony Sorbello also testified that pseudoephedrine is a primary precursor in the manufacture of methamphetamine and that the quantity of pseudoephedrine discovered in this case would yield 7.68 grams of methamphetamine, which is greater than the bulk amount of the substance. The pills in question were discovered unpackaged in a plastic bag within appellant's immediate reach in the vehicle. Based upon such evidence, we cannot find the jury clearly lost its way in finding appellant guilty of conspiracy to commit illegal manufacture of drugs.

[*P41] After a thorough review of the record, we find that appellant's convictions for illegal possession of chemicals for the manufacture of drugs and conspiracy to commit illegal manufacture of drugs are not against the manifest weight of the evidence, and are supported by sufficient evidence. Appellant's fifth assignment of error is therefore overruled.

*State v. Cox*, 2009 Ohio 928, ¶¶ 24-41 (Ohio App. 12th Dist. Mar. 2, 2009).

Upon review, the Court notes that the Ohio court of appeals made a thorough analysis of the elements of the charged crimes under Ohio law and of the evidence supporting each of those elements. It simply cannot be said that this decision is an objectively unreasonable application of *Jackson v. Virginia*. Therefore the fourth ground for relief should be dismissed with prejudice.

**Grounds Five and Six**

In his fifth and sixth grounds for relief, Mr. Cox makes claims of ineffective assistance of appellate counsel.  As noted above, before presenting a federal constitutional claim in habeas, a defendant must exhaust that claim by presenting it to the state courts and giving them a fair opportunity to decide it in the first instance.  If a habeas petitioner defaults in presenting the claim in the state courts, he is barred from proceeding on that claim in federal court.  *Wainright v. Sykes, supra.*

In Ohio, claims of ineffective assistance of appellate counsel must be presented in an application to reopen the direct appeal in the Ohio court of appeals.  Cox filed such a claim, but the Court of Appeals denied the motion on the grounds that it was untimely made.  (Return of Writ, Doc. No. 9, Ex. 30).  Applying the analysis from Maupin v. Smith, supra, Ohio does have a rule that an application under Ohio R. App. P. 26(B) must be filed within ninety days of the judgment in the court of appeals.  That rule was enforced against Mr. Cox in this case.  In noncapital cases such as this one, the timeliness rule for filing a 26(B) application is an adequate and independent state ground of decision.  *Parker v. Bagley,* 543 F.3d 859 (6th Cir. 2008); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir. 2007)(distinguishing holding in capital cases); *Monzo v. Edwards,*  281 F.3d 568 (6th Cir. 2002); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), citing *Rideau v. Russell*, 2009 WL 2586439 (6th Cir. Aug. 24, 2009).

Because Cox procedurally defaulted in presenting his ineffective assistance of appellate counsel claims to the state courts, this Court cannot reach the merits of those claims and they must be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied leave to appeal *in forma pauperis* and any request for a certificate of appealability.

April 26, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).